1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In Re: JOSEF FRIWAT, | ) ) ) | Civil No. 10cv2310-WQH-WMc |
| Debtor. | ) ) | Bankruptcy No. 08-06940-LT7 Bankruptcy Adversary No. 09-90584-LT |
| ——————————————— | ) ) | |
| JOSEPH FIELDING, an individual, | ) ) | |
| Appellant, | ) ) | **ORDER** |
| v. | ) ) | |
| MOHAMMED KASKAS, an individual and UNITED FAMILY, LLC, a business entity, form unknown, | ) ) ) ) | |
| Appellees. | ) ) | |
| ——————————————— | ) | |

HAYES, Judge:

The matter before the Court is the appeal of the Bankruptcy Court's order granting summary judgment in favor of Appellees Mohammed Kaskas and United Family, LLC ("United Family"). (ECF No. 1).

## I.    Background

On October 16, 2009, Appellant Joseph Fielding filed a Complaint against Kaskas and United Family in Los Angeles County Superior Court. (Compl., ECF No. 3-1 at 11).[1]

_____

[1]  The Record on Appeal, filed in this action as ECF Document Number 3, does not contain page numbers. Accordingly, the Court cites to the page numbers on the ECF header, as it appears on this Court's docket.

**A.      Allegations of the Complaint**

In March 2005, Fielding purchased a service station business located at 3401 Long Beach Boulevard in Long Beach, California from Josef S. Friwat.

On May 26, 2006, Fielding filed an action against Friwat and others for fraud and deceit in Orange County Superior Court.

In November 2006, "[b]ecause the business and its financial condition was misrepresented to Fielding by Friwat ..., Fielding turned the business back to Friwat." *Id.* ¶ 8.

On December 3, 2007, a jury returned a verdict in favor of Fielding, finding Friwat liable and awarding compensatory and punitive damages in the amount of $1,329,000.

On July 27, 2008, Friwat filed a voluntary Petition for Bankruptcy in the United States Bankruptcy Court, Southern District of California.

On December 10, 2008, Friwat filed a motion in his bankruptcy case for an order authorizing the sale of the subject property to Kaskas for $2,000,000, "which was far less than the market value and, also, less than the total value of the secured liens against the subject property." *Id.* ¶ 16.

On May 14, 2009, the bankruptcy court conducted an auction sale of the property. The high bidder at the auction was Ibrahim Guirges, who bid $2,700,000 for the property. The back-up buyer was Kaskas, "who was affiliated with Friwat as an undisclosed partner, or Kaskas's assignee, who bid the sum of $2,275,000." *Id.* ¶ 17. "The bankruptcy court ordered that Fielding's junior priority judgment lien attach to the net sales proceeds...." *Id.*

"Guirges could not obtain financing because, subsequent to May 14, 2009, Friwat presented false and misleading information to Guirges lender, Beach Business Bank, regarding alleged environmental contamination of the subject property. At the time ..., Kaskas was Friwat's partner." *Id.* ¶ 18.

On June 30, 2009, "Kaskas's nominee, Defendant [United Family], funded and closed the escrow for the sale of the subject property." *Id.* ¶ 19.

"Prior to the bankruptcy court ordered auction sale, Kaskas communicated with prospective bidders/purchasers of the subject property, advising these bidders/purchasers that

the subject property had severe environmental problems, which statements were intended to and succeeded in dissuading potential bidders/purchasers from entering the bidding at the auction sale." *Id.* ¶ 20.

The Complaint alleges four causes of action: (1) intentional interference with economic relations; (2) negligent interference with economic relations; (3) conspiracy to defraud creditors; and (4) willful misconduct. In support of the first cause of action, the Complaint alleges:

> As a direct and proximate result of the fraudulent conduct of Friwat and Defendants Kaskas [and United Family], the prospective buyer for the purchase of the subject property, Guirges, was unable to go forward with the purchase of the property. In addition, Defendants' fraudulent conduct dissuaded prospective bidders/purchasers from bidding on and purchasing the subject property.

*Id.* ¶ 22. In support of the second cause of action, the Complaint alleges that "when the Defendants made the aforementioned statements to Guirges' lender, Beach Business Bank and to prospective bidders/purchasers of the subject property at the bankruptcy court ordered auction sale, they had no reasonable ground for believing them to be true." *Id.* ¶ 26. In support of the third cause of action, the Complaint alleges that Defendants "conspired between themselves to hinder, delay and defraud [Fielding] in the collection of his claim and resulting judgment against Friwat." *Id.* ¶ 30. In support of the fourth cause of action, the Complaint alleges that Defendants committed "wilful misconduct" to damage Fielding. *Id.* ¶ 38.

## B.     Removal to Bankruptcy Court

On October 27, 2009, Kaskas and United Family removed the Complaint to the United States Bankruptcy Court for the Central District of California pursuant to 28 U.S.C. § 1441 and Federal Rule of Bankruptcy Procedure 9027-1. (ECF No. 3-1 at 87-91). The Notice of Removal states:

> Joseph Fielding, the Plaintiff in the removed action, is a judgment creditor of Josef Friwat, the Debtor in a Chapter 11 case now pending in the Souther District of California, entitle In Re Josef Friwat, Case No. 08-06940-LT.... United Family LLC, the Defendant in the removed action, is the buyer of the Debtor Friwat's Real Property pursuant to 11 U.S.C. § 363. Mohammad Kaskas, the other Defendant in the removed action, is the managing director of United Family LLC. United Family LLC was the successful bidder for the Debtor's Real Property and purchased the same pursuant to an order of the bankruptcy court....

1    *Id.* at 88.

2        On December 23, 2009, the Complaint was transferred to the United States Bankruptcy

3    Court for the Southern District of California, where it was assigned Adversary Proceeding No.

4    09-90584-LT, related to *In Re Josef Friwat*, Bankruptcy Case No. 08-06940-LT7.

5        On August 20, 2010, Kaskas and United Family filed a motion for summary judgment.

6    (ECF No. 3-2 at 2-102).

7        On September 7, 2010, Fielding filed an opposition to the motion for summary

8    judgment.  (ECF No. 3-3 at 1-156).

9        **C.    Evidence Submitted during Summary Judgment Proceedings**

10       In the late 1990's, a new gasoline service station was constructed on the Long Beach

11   property at issue.  (Snyder Decl. ¶ 2, ECF No. 3-3 at 23).  "The construction of the service

12   station included the placement of double-walled storage tanks and include[d] an extensive

13   monitoring system to prevent the possibility of gasoline leakage from the dispensers or storage

14   tanks."  *Id.* ¶ 3.

15       In connection with Friwat's acquisition of the Long Beach property in November 2005,

16   Friwat executed an agreement wherein Friwat represented that "[a]fter due inquiry and

17   investigation, [Friwat] has no knowledge, or reason to believe, that there has been any use,

18   generation, manufacture, storage, treatment, refinement, transportation, disposal, release, or

19   threatened release of any Hazardous Substances by any person on, under, or about the

20   Property."  (Werner Decl. ¶ 5, ECF No. 3-3 at 25; *see also* ECF No. 3-3 at 31).

21       On December 3, 2007, Friwat testified in the state court trial between Fielding and

22   Friwat.  Friwat testified that he had sold the Long Beach service station business and real

23   property to a company called Prime Oil Management, LLC for $4,450,000.  (Werner Decl. ¶

24   6, ECF No. 3-3 at 25-26; *see also* ECF No. 3-3 at 38).

25       According to Fielding's attorney, "[o]n December 4, 2007, the day after the jury's

26   verdict in the First Action, Fielding filed a new action in Orange County Superior Court ...

27   against Friwat and others to, *inter alia*, set aside Friwat's fraudulent transfer of the Long Beach

28   property to a limited liability company shortly before the trial of the first action."  (Werner

1   Decl. ¶ 7, ECF No. 3-3 at 26).

2   In December 2007, Encon Solutions, Inc. ("Encon") performed a Phase I environmental

3   investigation on the Long Beach property, and in February 2008, Encon performed a Phase II

4   environmental investigation on the property. (Kim Decl. ¶ 3, ECF No. 3-3 at 19). "The Phase

5   II environmental investigation was conducted by the utilization of a drilling contractor, who

6   drilled six (6) separate holes at the property." *Id*. Encon's Phase II investigation found that

7   there was a "significant level of petroleum hydrocarbon contamination" in three of the six soil

8   borings from the property. *Id*. ¶ 4. The other three soil borings "did not reveal a significant

9   level of petroleum hydrocarbon contamination." *Id*. Of the three soil borings which did reveal

10   contamination, "MTBE was not found to be above laboratory reporting limit. MTBE is a fuel

11   oxygenate additive which was added to gasoline beginning in the late 1980s and predominantly

12   after [the] 1990 Clean Air Act." *Id*. Encon's investigation revealed that the property had been

13   used as a service station, with underground storage tanks, at least since 1963. *Id*. ¶ 3. Encon

14   performed the investigations "[f]or its customer, Nara Bank." *Id*.

15   On June 19, 2008, Friwat submitted a declaration in the second state court action

16   between Fielding and Friwat. Friwat stated that an environmental study on the Long Beach

17   property, dated January 18, 2008, "revealed contamination on the property." (Friwat Decl. ¶

18   3, ECF No. 3-3 at 93). Friwat stated that the study "was a requirement of Nara Bank which

19   was the bank that proposed to finance the sale of the property" and as a result of the study,

20   "Nara Bank refused to consummate the purchase loan and the sale never closed." *Id*. ¶¶ 2-3.

21   Friwat attached to his declaration a copy of a report dated January 18, 2008 from American

22   Scientific Laboratories, LLC, which found that soil samples from the property "contained

23   detectable levels of ... gasoline organics." (ECF No. 3-3 at 107).

24   On July 27, 2008, Friwat filed a voluntary Petition for Bankruptcy under Chapter 7 of

25   the United States Bankruptcy Code in United States Bankruptcy Court, Southern District of

26   California, Case No. 08-06940-LT7. American Scientific Laboratories, LLC was listed as an

27   unsecured creditor in Friwat's July 27, 2008 bankruptcy petition. (ECF No. 3-3 at 135).

28   On December 10, 2008, Friwat filed a motion in his bankruptcy case for an order

authorizing the sale of the subject property to Kaskas for $2,000,000, subject to overbids at a court conducted auction sale.  (S.D. Cal. Bankr. Case No. 08-06940, ECF No. 62-1).

The Notice of Bankruptcy Sale for the Long Beach property, which was approved by order of the bankruptcy court, provided the following:

> The Property has been used as a gas station with underground gasoline storage tanks located on the Property.  The Debtor is informed that both Phase I and Phase II environmental reports have been performed on the Property.  The Debtor has conflicting information as to the existence of toxic remediation issues, thus any prospective buyer should obtain its own environmental reports.  The Debtor will also turn over any environmental reports in his possession.

(ECF No. 4-1 at 7).  The bankruptcy court ordered that the notice of auction sale be advertised for no less than 45 days prior to the May 14, 2009 auction sale.

Ron Reger, a real estate salesperson, saw the notice of auction sale advertised on the internet during April of 2009.  (Reger Decl. ¶ 3, ECF No. 3-3 at 21).  In a declaration, Reger stated that, on May 6, 2009, he spoke on the telephone with Friwat's bankruptcy attorney, Thomas Polis.  Reger stated:

> Mr. Polis told me that there was a great deal of interest in the property, which had generated at least four separate offers and four separate deposits of $100,000 into escrow, which was required by any potential bidder in order to be able to participate in the bidding at the auction sale.
>
> Approximately thirty minutes after I spoke to Mr. Polis, I contacted the escrow holder ... and spoke to escrow officer Kimberly Mills.  Ms. Mills told me that there was only one deposit of $100,000 that was submitted by any bidder and that the bidder was Mohammed Kaskas.
>
> I knew Mr. Kaskas from prior dealings with him involving the purchase and sale of service station business properties.  I called him on May 6, 2009 and told him that I might have a buyer for the Long Beach property.  Mr. Kaskas told me that the property was contaminated and that I should not have my client bid on the property.  Mr. Kaskas suggested that we meet and discuss the matter further....
>
> On May 12, 2009, I met with Mr. Kaskas in Chino Hills, California.  Once again, he told me that my client should not be interested in the property because of the environmental contamination found at the Long Beach property.  He further told me that my client would never be able to get financing because of the contamination issue.  I asked Mr. Kaskas how, with the environmental contamination on the property, he could obtain financing for his purchase of the Long Beach property.  He told me that his partner was the owner of the Long Beach property and had already obtained financing, which he would simply assume.
>
> In further discussions with Mr. Kaskas that day, he told me that his partner in the Long Beach property was Josef Friwat.  He made multiple

references in our discussion to his partner Mr. Friwat.

*Id.* ¶¶ 4-8.

In a deposition, Kaskas testified that he met with Reger in Chino Hills, and discussed the Long Beach property and the ARCO company. (Kaskas Dep. at 82, ECF No. 3-3 at 148). Kaskas testified that he told Reger about the contamination of the Long Beach property. (Kaskas Dep. at 85, ECF No. 3-3 at 149).

On May 14, 2009, the bankruptcy court conducted an auction sale of the Long Beach property and two bidders appeared: Ibrahim Guirges, who won with a bid of $2,700,000, and Kaskas, who bid $2,275,000. (ECF No. 3-1 at 23-25; *see also* Kaskas Decl. ¶¶ 3-4, ECF No. 3-2 at 2). According to the bankruptcy court's order approving the sale of the property, Guirges had until June 15, 2009 to close escrow and complete the transaction for Guirges' bid amount. (ECF No. 3-1 at 24). The order provided that, in the event Guirges did not timely complete the sale, Kaskas would have until July 2, 2009 to complete the sale for Kaskas' bid amount. *Id.* The order was approved as to form and content by, *inter alia*, counsel for Fielding. *Id.* at 25.

Guirges applied to Beach Business Bank for a loan to purchase the Long Beach property. (Bond Dep. at 6-7, ECF No. 3-2 at 81-82). Phillip J. Bond, the Chief Credit Officer for Beach Business Bank, testified that Beach Business Bank commissioned a Phase I environmental report conducted by a company named Odic Environmental. (Bond Dep. at 9, ECF No. 3-2 at 84). The Odic report, dated June 9, 2009, stated that there had been an oil well on the Long Beach property from 1925 to approximately 1994, as well as gasoline service station operations from 1958 to 2008. (ECF No. 3-2 at 59). The Odic report stated: "Based on significant levels of petroleum hydrocarbons found in soil at depths of 30 feet, further delineation and assessment of site conditions should be conducted to determine the vertical and horizontal extent of contamination, including evaluation of groundwater conditions beneath the site." *Id.* Bond testified "the bank declined the loan" to Guirges "solely [because of] the Odic report and the condition of the property that is reported in that report." (Bond Dep. at 12, 15, ECF No. 3-2 at 11, 19). Bond testified the bank also had a copy of an earlier Phase I report

conducted by a company named Heron, which revealed "no evidence of environmental conditions." (Bond Dep. at 27-28, ECF No. 3-3 at 143-44). Bond testified that "given what was contained in the Odic report, [the bank] just decided [it] did not want to touch the property." (Bond Dep. at 26, ECF No. 3-3 at 142).

Kaskas testified that he took over the Long Beach property at the end of June 2009. (Kaskas Dep. at 125, ECF No. 3-3 at 150). Kaskas testified that ARCO provided Kaskas with $500,000 financing to brand the Long Beach property as an ARCO "am/pm" service station, which began operating in December 2009. (Kaskas Dep. at 125-26, ECF No. 3-3 at 150-51). Kaskas testified that he paid Friwat $1,300 to transport pumps to the property, but otherwise he had not paid Friwat any money. *Id*. Kaskas testified that, between June 2009 (when he took over the property) and April 2010 (when his deposition was taken), Kaskas had not yet "done anything to determine what the costs would be to remedy" any contamination of the property. (Kaskas Dep. at 127, ECF No. 3-3 at 152). Kaskas testified that he planned to contact the State of California about remedying the contamination during the summer of 2010. *Id*. Kaskas testified that "[a]ny contamination [of the property] has to be before" 1999, when California required all stations to install fiberglass underground storage tanks. (Kaskas Dep. at 130, ECF No. 3-3 at 153).

Kaskas submitted a declaration stating:

> I am not now nor have I ever been a partner in any business or activity with the Debtor Friwat. The only business dealings I, or any entity in which I have had an interest has had with Friwat is the purchase of some pumps and registers from him for the Long Beach station. Since United Family LLP purchased the station, Friwat has had no interest in the station or in United Family LLP directly or indirectly.

(Kaskas Decl. ¶ 5, ECF No. 3-2 at 2).

### D.    Order Granting Summary Judgment

On October 21, 2010, the bankruptcy court issued an order granting summary judgment in favor of Kaskas and United Family. The bankruptcy court summarized the allegations of the complaint and set forth the following findings and conclusions:

> 1.  Plaintiff Joseph Fielding filed his complaint on October 16, 2009 in the Superior Court for the County of Los Angeles. The action was removed by Defendants and transferred to this Court. No appeal was taken from the order

denying remand or transferring the action to this Court.

2.  The order approving the sale of Debtor Josef Friwat's ... gas station located at 3401 Long Beach Blvd., Long Beach, CA ('Property') to the successful bidder, Ibrahim Guirges, for $2,700,000, and to Defendant United Family LLC as a back-up buyer for $2,275,000, was entered on June 16, 2009.  The order recites that both Mr. Guirges and Defendant Kaskas/United Family LLC are good faith purchasers pursuant to 11 USC § 363(m).  No appeal was taken from this order.
....

4.  With respect to the allegation that Defendants or the Debtor interfered with the ability of the highest bidder, Ibrahim Guirges, to secure financing, Plaintiff presented no evidence to counter that offered by Defendants in the form of the deposition testimony of Phillip Bond, Chief Loan Officer for Beach Business Bank.  Mr. Bond testified that the loan was declined solely because of the contamination found by its environmental consultant, Odic Environmental. The Odic report referred to a limited Phase 2 subsurface examination conducted by Encon Solutions, Inc. and given to Odic by the Debtor.  In January of 2008, Encon Solutions performed six soil borings and found petroleum hydrocarbons in the soil at depths of 30 feet.   Based on the Encon findings, Odic recommended to Beach Business Bank that a Phase 2 environmental assessment be commissioned. Guirges did not obtain a Phase 2, and therefore Beach Business Bank denied his loan application.

5.  Plaintiff does not dispute that Beach Business Bank declined the Guirges' loan because of the contamination described in the Odic Environmental report. Nor does he dispute the findings of Odic or Encon Solutions.  When asked if Plaintiff had any evidence that the two environmental reports were a product of fraud or subterfuge, counsel conceded that he had none.  Further, counsel agreed that the Debtor's gas station is contaminated, but maintains that the contamination occurred prior to 1999 when new underground storage tanks were installed.  The Court does not take issue with this assertion, it is not disputed by Defendants, and it does not create a triable issue here.

6.  In support of his allegation that Defendants deterred potential bidders, Plaintiff offered the Declaration of Ron Reger, a real estate broker.  Mr. Reger stated that Defendant Kaskas told him that Reger's client should not be interested in the Debtor's gas station because the property was contaminated, and that the contamination would make financing impossible. Mr. Reger did not identify his client or state that his client was deterred from bidding.  Nor did Mr. Reger state that he was deterred from procuring possible bidders as a result of Defendant Kaskas' statements to him.  Mr. Reger also stated that Defendant Kaskas told him he was a partner with the Debtor, but Plaintiff presented no evidence regarding this partnership.

7.  Any statement by the Defendants to any interested person that the Property is contaminated is simply the truth.

8.  As for Defendant Kaskas' statement that financing would be difficult or impossible due to the contamination, this is a statement of opinion.  In fact, the successful bidder, Guirges, was unable to secure financing precisely because the Property was contaminated.

9.  The Court finds that the Declaration of Ron Reger and the Declaration of Lee Werner do not establish or create a triable issue that Defendants deterred anyone

-9-

from bidding on the Debtor's Property, or that Ron Reger himself was deterred from procuring potential bidders.  The Reger Declaration also does not establish that the Debtor and Defendant Kaskas were involved in a partnership the purpose of which was to sabotage or compromise the Bankruptcy Court sale of the Debtor's Property.  Plaintiff's counsel conceded that he had no other evidence on these points, but asked the Court to infer that these things could have occurred.  The Court declines to make such inferences without any evidentiary support; such inferences are not sufficiently plausible to raise a triable issue of material fact.

10. This Court's order establishing the sale procedures for the Debtor's Property required that it be advertised for 52 calendar days.  Further, the Notice of Sale warned of contamination, required the Debtor to turn over environmental reports in his possession, and advised bidders to conduct their own environmental examination.  The Encon Solutions report states that the Property is contaminated.  The sales environment described by Plaintiff's counsel in argument was no more nor less than that described in the Notice of Bankruptcy Sale.  Further, the sales environment did not preclude Guirges from making a substantial bid of $2,700,000 at the auction.

11. The Plaintiff's evidence does not raise triable issues of material fact.  The Reger and Werner Declarations, viewed in the light most favorable to Plaintiff, raise no more than a 'metaphysical' doubt—not a triable issue of material fact. The Snyder and Kim Declarations confirm that contamination exists, but that it was not caused recently; they do not create any triable issue.  The Court concludes that a trier of fact could not find in favor of Plaintiff based on the evidence presented.

(ECF No. 10 at 3-5).

**E.**     **Appeal**

On November 8, 2010, Fielding filed a notice of appeal of the bankruptcy court's October 21, 2010 order granting summary judgment.  (ECF No. 1).

After the record on appeal was filed and the parties filed their respective briefs, the Court conducted oral argument on May 20, 2011.

**II.     Standard of Review**

The district court has jurisdiction to hear appeals from final judgments, orders or decrees of the bankruptcy court.  *See* 28 U.S.C. § 158(a); *cf.* Fed. R. Bankr. P. 8013 ("On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.").  The bankruptcy court's decision granting summary judgment is subject to *de novo* review.  *See In re AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008).

Summary judgment is appropriate if there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *see also* Fed. R. Bankr. P. 7056 ("Rule 56 [of the Federal Rules of Civil Procedure] applies in adversary proceedings."). A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986). The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in his favor. *See Anderson*, 477 U.S. at 256.

To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "[T]he nonmoving party must come forward with specific facts showing there is a *genuine issue for trial*." *Matsushita,* 475 U.S. at 587 (quotation omitted). Neither an unverified complaint nor unsworn statements made in the parties' briefs can be considered as evidence at this stage. *See Moran v. Selig*, 447 F.3d 748, 759 & n.16 (9th Cir. 2006) (noting that unverified complaint cannot be considered as evidence on motion for summary judgment); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda ... are not evidence[.]"). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).

**III.    Contentions of the Parties**

Fielding contends:

> Essentially, the gist of what Fielding alleged in his state court action, that was removed to the bankruptcy court, was that appellees, along with their partner, Friwat, engaged in a fraud upon the marketplace to dissuade potential bidders from participating in the bankruptcy court ordered auction sale of the Long Beach property.

(ECF No. 7 at 25).  Fielding contends:

> The Reger declaration established that both Polis, Friwat's attorney, and Kaskas, Friwat's partner, made false and misleading statements to Reger, who represented potential bidders at the auction sale.  By inference, the circumstances surrounding the transaction and the relationship and interest of Friwat and Kaskas, it is also reasonable to infer that Reger was not the only person to whom Polis and Kaskas made false and misleading statements.  Friwat and Kaskas and their agents, in furtherance of their scheme to poison the marketplace for the auction sale of the Long Beach property, certainly provided the same false information to other potential bidders for the property.
>
> In short, there were multiple triable issues of material fact that precluded the granting of a summary judgment for appellees.

*Id.* at 26.  Fielding contends that, "[c]ontrary to California law, the bankruptcy court simply ignored the proof presented by Fielding's declarations, which showed a fraudulent scheme by Friwat and Kaskas both directly and 'by inference, by circumstances surrounding the transaction, and the relationship and interest of the parties.'"  *Id.* (quoting *Dyke v. Zaiser*, 80 Cal. App. 2d 639, 654 (1947)).

Kaskas and United Family contend:

> The problem with Plaintiff's appeal is that his evidence does not measure up to his imagination and the rhetorical flourish of his brief or his complaint.... Understandably, Plaintiff would have liked for the gas station to have sold for a higher price.  But the answer to his frustration is not to sue Mr. Kaskas or his company and make wild accusations.  If Plaintiff had evidence that something untoward occurred with regard to the bankruptcy court sale, the summary judgment motion was the time to present it.  He did not, and admitted he could not.  His appeal should therefore be denied and the judgment of the Bankruptcy Court affirmed.

(ECF No. 11 at 17).

## IV.   Discussion

In each of the four causes of action, Fielding contends that the wrongful act or misconduct is fraud or fraudulent misrepresentation.  *See* Compl. ¶¶ 22, 26, 31, 35-39, ECF No. 3-1 at 16-18; *see also* ECF No. 7 at 25-26 ("the gist of what Fielding alleged ... was that appellees, along with their partner, Friwat, engaged in a fraud upon the marketplace"; "Fielding's declarations ... showed a fraudulent scheme by Firwat and Kaskas"); ECF No. 13 at 5-6 ("the bankruptcy court erred by refusing to consider proof of fraud offered by

appellant").[2]  The elements of fraud under California law are "(a) misrepresentation; (b) defendant's knowledge of the statement's falsity; (c) intent to defraud (i.e., to induce action in reliance on the misrepresentation); (d) justifiable reliance; and (e) resulting damage." *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1184 (1993) (fraud) (citation omitted).

Fielding points to evidence of representations by Kaskas to Ron Reger, a real estate salesperson, that the Long Beach property was contaminated; that Reger "should not have [his] client bid on the property"; that Reger's client "would never be able to get financing because of the contamination issue"; and that Kaskas was planning to purchase the property by assuming the financing of Kaskas' partner, Friwat.  (Reger Decl. ¶¶ 6-7, ECF No. 3-3 at 22).

With respect to the representation that the property was contaminated, there is undisputed evidence in the record that, as of December 2007, soil samples from the property contained a "significant level of petroleum hydrocarbon contamination." (Kim Decl. ¶ 4, ECF No. 3-3 at 20).  Although a reference was made during the Bond deposition of a Phase I report conducted by a company named Heron, which revealed "no evidence of environmental conditions," Bond Dep. at 27-28, ECF No. 3-3 at 143-44, there was no designated evidence showing when and how the Heron investigation was conducted, including whether soil samples were examined.  Absent this evidence, the Court cannot find that there is an issue of fact as to whether the property was, in fact, contaminated.  Accordingly, Fielding failed to create a genuine issue of material fact as to the truthfulness of Kaskas' statement that the property was contaminated.  *Cf. Masters v. San Bernardino County Emps. Ret. Ass'n*, 32 Cal. App. 4th 30,

---

[2]  The four causes of action alleged are: (1) intentional interference with economic relations; (2) negligent interference with economic relations; (3) conspiracy to defraud creditors; and (4) willful misconduct.  To establish a claim for intentional or negligent interference with prospective economic relations, "a plaintiff must plead that the defendant engaged in an independently wrongful act.  An act is not independently wrongful merely because defendant acted with an improper motive.... [A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (intentional interference); *see also Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1077 (2007) (negligent interference).  The only independently wrongful acts alleged in the Complaint or discussed in Fielding's briefs are acts Fielding labeled as fraud or fraudulent.  *Cf. Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 410 (1995) ("The independently tortious means that commonly appear in this context, includ[e] ... fraud and deceit.") (citations omitted).

40 n.6 (1995) (in order to demonstrate fraud, a plaintiff must produce sufficient evidence for a reasonable jury to find that the defendant's representation was false or untrue)

Even if there was an issue of fact as to whether the property was contaminated, Fielding also must produce sufficient evidence for a reasonable jury to find that Kaskas knew that the property was not contaminated, and that a prospective bidder relied upon the representation that the property was contaminated. *See Hunter*, 6 Cal. 4th at 1184. Fielding has failed to proffer any evidence that Kaskas knew the property was not contaminated. Likewise, there is no evidence of any potential bidders who failed to bid on the property due to Kaskas' statements or statements attributable to Kaskas. Reger stated in his declaration that he told Kaskas that he "might have a buyer" for the property, but Reger did not state that he relayed Kaskas' comments to this prospective buyer, and that the prospective buyer then relied upon those comments in deciding not to bid on the property. (Reger Decl. ¶ 6, ECF No. 3-3 at 22).

With respect to Kaskas' other representations to Reger—i.e., that Kaskas was planning to purchase the property by assuming Friwat's financing and that Reger's client should not bid on the property and would not be able to get financing—these statements cannot constitute actionable misrepresentations because they are opinions or statements regarding future events. *See San Francisco Design Ctr. Assocs. v. Portman Cos.*, 41 Cal. App. 4th 29, 44 (1995) ("[A]n actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions."); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) ("[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud.") (quotation omitted).

Fielding contends that statements made by Friwat and Friwat's bankruptcy attorney, Polis, should be attributable to Kaskas and United Family because Kaskas told Reger that Friwat was his "partner." (Reger Decl. ¶ 8, ECF No. 3-3 at 22). Polis told Reger that there were "at least four separate offers and four separate deposits of $100,000 into escrow." (Reger Decl. ¶ 4, ECF No. 3-3 at 21). Thirty minutes after speaking to Polis, Reger spoke with the escrow officer, who told Reger that there was only one deposit in escrow. (Reger Decl. ¶ 4,

ECF No. 3-3 at 21). Even if Polis' misrepresentation could be attributed properly to Kaskas and United Family, there is no evidence that Reger or his client relied upon the misrepresentation.

Fielding contends that the reports of contamination were "generate[d]" by Friwat. (ECF No. 7 at 21). Fielding points to evidence that American Scientific Laboratories, LLC was listed as an unsecured creditor in Friwat's July 27, 2008 bankruptcy petition. (ECF No. 3-3 at 135). However, even if a jury were to infer from this that Friwat paid for the January 18, 2008 American Scientific Laboratories, LLC study, this would not contradict Friwat's statement that the study "was a requirement of Nara Bank which was the bank that proposed to finance the sale of the property." (Friwat Decl. ¶ 2, ECF No. 3-3 at 93). Moreover, Fielding has not introduced evidence to contradict the evidence that the December 2007 and February 2008 Encon investigations were performed for Encon's "customer, Nara Bank." (Kim Decl. ¶ 3, ECF No. 3-3 at 19). And even if there was evidence that Friwat "generate[d]" the contamination reports, as discussed above, there is no evidence that the reports were false.

Fielding's attorney submitted a declaration stating that, on February 26, 2008 and March 3, 2008, Friwat submitted declarations in the second state court action between Fielding and Friwat, and "[n]either declaration hinted at any environmental or contamination problem with the Long Beach property." (Werner Decl. ¶ 8, ECF No. 3-3 at 26). After review of the Friwat declarations, neither the February 26, 2008 declaration nor the March 3, 2008 declaration contains any representations regarding whether the property is, or is not, contaminated. (ECF No. 3-3 at 39-43). Fielding points to Friwat's representation in October 2005 that Friwat had no knowledge of any hazardous substance on the property. (ECF No. 3-3 at 31; *see also* ECF No. 7 at 9; ECF No. 13 at 2-3). However, it is undisputed that the first discovery of contamination on the property occurred in December 2007 through February 2008.

Fielding contends that, "[c]ontrary to California law, the bankruptcy court simply ignored the proof presented by Fielding's declarations, which showed a fraudulent scheme by Friwat and Kaskas both directly and 'by inference, by circumstances surrounding the

transaction, and the relationship and interest of the parties.'" *Id.* (quoting *Dyke v. Zaiser*, 80 Cal. App. 2d 639, 654 (1947)).  However, under California law, a fraud claim may not "be based on inference piled on inference."  *Webb v. State Bar*, 47 Cal. 2d 866, 871 (1957). "Where ... the plaintiff seeks to prove an essential element of her case by circumstantial evidence, she cannot recover merely by showing that the inferences she draws from those circumstances are *consistent* with her theory.  Instead, she must show that the inferences favorable to her are *more reasonable or probable* than those against her." *Leslie G. v.. Perry & Assocs.*, 43 Cal. App. 4th 472, 483 (1996) (citations omitted); *see also Bowman v. Wyatt*, 186 Cal. App. 4th 286, 312 (2010) (same); *Joseph E. Di Loreto, Inc. v. O'Neill*, 1 Cal. App. 4th 149, 161 (1991) ("When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.") (citation omitted). Based upon the evidence submitted, it is not a reasonable inference that, for example, Kaskas' statements that the property was contaminated were false and he knew them to be false at the time.  Based upon the evidence submitted, the Court finds that Fielding has failed to create a genuine issue of material fact concerning whether there was an actionable misrepresentation attributable to Kaskas, as well as justifiable reliance on that misrepresentation by any potential bidder.

In addition to showing an actionable misrepresentation and justifiable reliance, Fielding has the burden of demonstrating that he suffered damages.  Fielding has failed to designate evidence that the reasonable value of the Long Beach property exceeded the $2,275,000 paid by Kaskas, given the undisputed evidence of contamination.  Such evidence would be necessary to show that Fielding was damaged by the sale of the property to Kaskas and United Family.  In its June 16, 2009 order approving the sale of the property to Guirges as buyer and Kaskas as back-up buyer, the bankruptcy court found that "[b]oth the Buyer and the Back-Up Buyer are deemed to be a purchaser in good faith and thus the Real Property is sold pursuant to Section 363(m) of the Bankruptcy Code."  (ECF No. 3-1 at 25).  This order was approved as to form and content by Fielding's counsel, and no appeal was taken from the sale order.  A

1  "good faith purchaser" pursuant to 11 U.S.C. § 363(m) "is one who buys in good faith and for

2  value." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (quotation omitted); *cf. Annod Corp.*

3  *v. Hamilton & Samuels*, 100 Cal. App. 4th 1286, 1294 (2002) (under California law, "if a

4  transfer is made both in good faith and for a reasonably equivalent value, then the transfer is

5  not a fraudulent transfer").

6      After review of the record and the submissions of the parties, the Court finds that there

7  is insufficient evidence for a reasonable fact-finder to find in favor of Fielding on his

8  Complaint against Kaskas and United Family. Accordingly, summary judgment is proper for

9  Kaskas and United Family as to all of Plaintiff's claims, and the decision of the bankruptcy

10 court is affirmed.

11 **V.    Conclusion**

12     IT IS HEREBY ORDERED that the order of the bankruptcy court granting summary

13 judgment in favor of Kaskas and United Family is AFFIRMED. The Clerk of the Court shall

14 enter judgment in favor of Appellees and against Appellant.

15 DATED:  May 26, 2011

16                    *William Q. Hayes*

17                    **WILLIAM Q. HAYES**
                    United States District Judge

18

19

20

21

22

23

24

25

26

27

28